UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Roxanne Tyler, as Trustee for the Next of Kin of Thomas Tyler,<br><br>    Plaintiff,<br><br>v.<br><br>Charles M. Harper, Jr., M.D. & Mayo Clinic - Rochester, a Minnesota corporation,<br><br>    Defendants. | Civil No.<br><br>**COMPLAINT** |

**DEMAND FOR JURY TRIAL**

Plaintiff, Roxanne Tyler, as Trustee for the Next of Kin of Thomas Tyler, for her claims against Defendants Charles M. Harper, Jr., M.D. and Mayo Clinic-Rochester, a Minnesota corporation, herein states and alleges:

**JURISDICTION**

1. Plaintiff Roxanne Tyler, as Trustee for the Next of Kin of Thomas Tyler (hereinafter "Plaintiff") is a resident of West Monroe, New York, residing at 6 Dee Char Lane, West Monroe, New York 13167.

2. Defendants Charles M. Harper, Jr., M.D. (hereinafter "Defendant Harper") and Mayo Clinic, its agents and employees, (hereinafter "Defendant Mayo") are believed to be a resident of Minnesota and a Minnesota corporation, respectively, with Defendant Harper a resident at 1913 Westwood Court SW, Rochester, MN 55902 and Defendant Mayo has its principle place of business at 200 First Street SW, Rochester, Olmsted County, Minnesota

55905. Defendants are engaged in the business of providing medical services. Defendant Harper is a physician licensed to practice medicine in the State of Minnesota and practices medicine at Defendant Mayo's facilities. Defendant Mayo is a medical facility employing physicians and individuals licensed to practice medicine in the State of Minnesota who reside in Olmsted County, State of Minnesota.

3. The amount in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars.

## CAUSE OF ACTION

4. On September 22, 1999, Thomas Tyler underwent a CT scan of his chest at the facilities of Defendant Mayo. The radiologist's interpretation of that CT scan noted "a large inhomogeneous mass arising from the lower pole of the left kidney." The radiologist opined that "[t]his mass is indeterminate and worrisome for renal cell carcinoma" and stated that an ultrasound "could be helpful in further evaluation."

5. Defendant Harper admits in the medical record that he reviewed the 1999 CT scan but the enlarging kidney mass "went unnoticed" by him. No additional testing was performed on this abnormality until November 4, 2005, at which time the mass was larger and associated with new masses in the lungs.

6. Thomas Tyler received a medication refill from Defendant Harper on April 27, 2004 that was charted in the same medical record containing the report of the enlarging kidney mass. Thomas Tyler saw Defendant Harper for a

2

medical evaluation on July 27, 2004, yet there is no indication that the enlarging kidney mass was addressed at that time (nor at any other time by Defendants in 2004).

7. Another chest CT scan on November 4, 2005 revealed the kidney mass had increased further in size and was now associated with several masses in the lungs. Dr. Harper admitted that the previously identified enlarging kidney mass went unnoticed by him. He also noted that Thomas Tyler had undergone a chest x-ray in July 2005 at Defendant Mayo's facility that was normal, in contrast to the current chest x-ray that showed new lung masses.

8. Subsequent testing revealed that the kidney mass was an 8.5 cm maximum diameter conventional cell carcinoma with involvement of the renal vein (a T3b) and metastases to the lungs. This combination of features made this a Stage IV cancer.

9. Despite performing a nephrectomy and other treatments to manage Thomas Tyler's cancer, he died of the cancer on October 27, 2007.

10. The standard of care for Defendant Harper and Defendant Mayo required that they perform further evaluation of the renal mass noted on the 1999 CT scan prior to November 2005.

11. Both Defendants provided care to Thomas Tyler in April and July 2004 that required referring to his medical chart within which was the chest CT that showed the left kidney mass. Both these opportunities to diagnose the cancer and treat it are within the statute of limitations and Defendants' standards of care made them responsible for noting clinically significant

abnormalities in that medical record and appropriately respond to those abnormalities on both those occasions. Both Defendants breached their standard of care on both occasions when they failed to address the renal mass on those dates.

12. It is probable that Thomas Tyler's kidney cancer would have been diagnosed and treated for cure if the kidney mass had been properly evaluated and treated by Defendants in 2004. Defendants' delay in diagnosing and treating the kidney mass identified by them in 1999 allowed the cancer to advance to an incurable status.

13. Thomas Tyler was 59 years old when he died, leaving a widow, Roxanne Tyler, to whom he had been married more than 28 years. He also left a 22 year old daughter, Kathleen B. Tyler; and three sons (Justin T. Tyler, Jonathan S. Tyler and Max A. Tyler), ages 28 years, 26 years and 16 years. In addition, he was survived by his 83 year old mother, Bertha Tyler; his 60 year old brother, James Tyler; and his 63 year old sister Kaye Jackson.

14. As a direct result of Defendant's negligence, Plaintiff has suffered the loss of a husband, a father, a son and a brother. The losses include both financial support and the aid, comfort and emotional support Thomas Tyler previously provided to his loved ones. The losses are valued in excess of $75,000.00.

WHEREFORE, Plaintiff prays that this Court enter judgment against the Defendants in her favor for compensatory damages in a sum in excess of Seventy Five Thousand and no/100 Dollars ($75,000.00), together with all costs and disbursements

herein, and any other amounts adjudged to be due the Plaintiff, as the Court deems just and equitable.

Dated March 3, 2008           By _____
                              David B. Ketroser (#298803)
                              ***ATTORNEY FOR PLAINTIFF***
                              P.O. Box 427
                              Hopkins, Minnesota 55343
                              (952) 933-2338; fax (952) 933-3669